IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 12, 2008

**STATE OF TENNESSEE v. DANIEL EARL WILLIAMS**

**Appeal from the Circuit Court for Madison County**
**No. 07-255    Donald H. Allen, Judge**

---

**No. W2008-00367-CCA-R3-CD  - Filed May 5, 2009**

---

A Madison County jury convicted the defendant, Daniel Earl Williams, of one count of driving under the influence, first offense, a Class A misdemeanor, one count of violation of the implied consent law, a Class A misdemeanor, one count of violation of the registration law, a Class C misdemeanor, and one count of violation of the open container law, a Class C misdemeanor. Following trial, the defendant submitted to having seven prior driving under the influence offenses and was convicted of driving under the influence, eighth offense, a Class E felony. The trial court sentenced the defendant as a Range I offender to serve two years in the custody of the Department of Correction. The defendant's sole issue on appeal is that the evidence produced at trial was insufficient to support his felony conviction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

George Morton Googe, District Public Defender; Gregory D. Gookin, Assistant District Public Defender, attorneys for appellant, Daniel Earl Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; James G. Woodall, District Attorney General; and Anna Banks Cash, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

**OPINION**

At trial, Justin Lee Adcox testified that on the night of November 29, 2006, he was in his

house located at 55 Mitchell Street when he heard a "big loud rumbling noise outside." Mr. Adcox looked out of his window and saw an unfamiliar truck, driven by the defendant, travel from the road into his yard and back onto the street again before pulling to a stop in Mr. Adcox's driveway. Upon approaching the truck, Mr. Adcox discovered the defendant passed out in the driver's seat. Mr. Adcox testified that his roommate then called the police and that the defendant remained unconscious until the police arrived.

Officer Samuel Gilley of the Jackson Police Department was dispatched to 55 Mitchell Street to respond to the call. Officer Gilley testified that he approached the truck and observed the defendant, who "appeared to be asleep with his head on the driver's side window," holding a Budweiser beer in his hand. Officer Gilley tapped on the defendant's window and then opened the truck door to try and wake him up. Officer Gilley testified that he and Officer Carey Hart had to help the defendant out of the truck to prevent him from falling out. Once the defendant woke up and began talking, Officer Gilley noticed that the defendant smelled of alcohol and had bloodshot eyes and slurred speech.

The defendant told Officer Gilley that he had been "drinking a lot" and probably could not pass the field sobriety tests. Officer Gilley administered three field sobriety tests: the four finger count, the ABC's, and the one legged stand. Officer Gilley testified that the defendant performed the "[g]eneral way an intoxicated person would perform," by counting out of order, failing to follow simple instructions and losing his balance. After administering the field sobriety tests, Officer Gilley placed the defendant under arrest and read him the implied consent form, to which defendant refused compliance. Officer Gilley also testified that he ran a check on defendant's license that came back with the status of revoked; this portion of defendant's Official Driving Record was submitted to the jury for consideration.

Officer Carey Hart of the Jackson Police Department also responded to the call from 55 Mitchell Street, arriving at the scene around the same time as Officer Gilley. Officer Hart corroborated Officer Gilley's account of the events. Following Officer Hart's testimony, the State rested.

The defendant called as a witness Melinda Branch, the defendant's girlfriend of three years. Ms. Branch testified that on the night in question she and the defendant had been at a pool tournament at Sharp's, a local bar, when the defendant began drinking heavily. Ms. Branch and the defendant left Sharp's and proceeded to another bar, the Corner Tavern, where the defendant progressively became more intoxicated. Around midnight, Ms. Branch and the defendant began arguing about the defendant's excessive drinking. In an effort to defuse the situation, Ms. Branch testified that she decided to drop the defendant at his brother's house. Ms. Branch knew that the defendant's brother had recently moved to 51 Mitchell Street, but she had never been there before. Before leaving the bar to drive the defendant home, Ms. Branch stated that she called her daughter, Deanna Presley, to meet her at the defendant's brother's home on Mitchell Street. Ms. Branch testified that she dropped the defendant at 55 Mitchell Street under the mistaken belief that it was his brother's residence.

Ms. Branch conceded her lack of experience with driving trucks with trailers connected on

the back. Ms. Branch testified that she drove the defendant's truck through the yard of 55 Mitchell Street because she could not figure out another way to get the truck and trailer turned around. She said that after eventually parking the defendant's truck in the driveway, she left the defendant "half passed out," telling him to either go back to sleep or go inside his brother's house. Ms. Branch took the keys out of the truck's ignition and "tossed them inside the vehicle" before getting in the car with her daughter and going home. On cross-examination, Ms. Branch admitted that while the defendant was "about passed out" when they pulled in the driveway, she did not know what he did after she left.

Deanna Presley, Ms. Branch's daughter, testified that Ms. Branch called her on the night of November 29, 2006, to ask that she come pick her up at the defendant's brother's house because Ms. Branch and the defendant had been arguing. Ms. Presley testified on cross-examination that Ms. Branch was already at the Mitchell Street address when she called to ask for a ride. Depending on the traffic lights, Ms. Presley estimated that it took her ten to fifteen minutes to get from her home to Mitchell Street that night. When she arrived at 55 Mitchell Street, Ms. Presley testified that Ms. Branch was "coming around the house," and got into the car with her. From there, they drove home. Ms. Presley's testimony concluded the defense's proof, as the defendant elected not to testify on his own behalf.

After a short deliberation, the jury found defendant guilty of driving under the influence, violating the implied consent law, violating the open container law, and driving without proof of registration. The jury was unable to reach a unanimous verdict as to the count of driving on a cancelled, suspended or revoked license. The trial court declared a mistrial as to this count.

## ANALYSIS

The defendant argues that the evidence presented at trial was insufficient to support his conviction for driving under the influence. The defendant points to the jury's alleged inconsistent verdicts to support his contention that the evidence was insufficient to establish beyond a reasonable doubt that defendant was driving or physically in control of his vehicle. Specifically, the defendant submits that if the jury found that he was driving a truck while under the influence, they "*must* also have found that [he] was driving on a revoked driver's license at the same time." The State contends that the evidence presented at trial establishes the elements of the offense of driving under the influence beyond a reasonable doubt. Following our review, we agree with the State.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on

appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The defendant was convicted under section 55-10-401 of the Tennessee Code Annotated, which provides:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises that is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant . . . .

The jury could not reach a unanimous verdict as to the charge of driving while the privilege to do so is cancelled, suspended or revoked. This offense is codified in section 55-50-504 of the Tennessee Code Annotated, which provides in relevant part:

> (a)(1) A person who drives a motor vehicle within the entire width between the boundary lines of every way publicly maintained that is open to the use of the public for purposes of vehicular travel, or the premises of any shopping center, manufactured housing complex or apartment house complex or any other premises frequented by the public at large at a time when the person's privilege to do so is cancelled, suspended, or revoked commits a Class B misdemeanor.

Defendant argues that the jury's inability to reach a unanimous verdict on the charge of driving while the privilege is revoked implies that the jury questioned whether or not defendant actually drove or had physical control over his vehicle. It is well established in Tennessee that "consistency between verdicts on separate counts of an indictment is not necessary," as each count is to be regarded as a separate offense. Wiggins v. State, 498 S.W.2d 92, 93 (Tenn. 1973). We decline to engage in speculation as to the jury's rationale in reaching its verdict. Our inquiry focuses on whether the evidence is sufficient to support the verdict for the offense of which the defendant was actually convicted, which is driving under the influence in this case. If we are satisfied that the evidence produced establishes guilt of the offense, then we will not engage in pure speculation as to the jury's rationale regarding the alleged inconsistent verdict.

Viewed in the light most favorable to the State, the evidence presented at trial supports the defendant's conviction of driving under the influence. Justin Adcox testified that he saw the defendant drive from the road into his yard before swerving back out onto the road and parking in his driveway. Mr. Adcox discovered the defendant passed out behind the wheel of the vehicle. Upon arrival at the scene, the police officers found the defendant asleep behind the wheel with a can of beer in his hand. The defendant admitted to the officers that he was drunk on the night of the incident. We conclude that the proof establishes the elements of the offense of driving under the influence beyond a reasonable doubt.

CONCLUSION

Based upon the foregoing, the judgment of the Madison County Circuit Court is affirmed.


_____
D. KELLY THOMAS, JR., JUDGE